Date signed June 13, 2008



**JAMES F. SCHNEIDER**
**U. S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| ALAN PULTZ and<br>KELLY PULTZ, | * | Case No. 06-16634-JS |
| Debtors | * | Chapter 13 |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

| | | |
|---|---|---|
| KELLY PULTZ<br>f/k/a KELLY A. WHITIS, | * | |
| | * | |
| Plaintiff | * | |
| v. | * | Adv. Proc. No. 07-00403-JS |
| NOVASTAR MORTGAGE, INC. | * | |
| Defendant | * | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

### *MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT*

In the instant adversary proceeding, a debtor seeks damages against a mortgage

lender for violations of the automatic stay.  The matters before the Court are cross

motions for summary judgment, as well as the defendant's motion to dismiss the plaintiff's second amended complaint.[1]  For the reasons stated, the motion of the plaintiff for summary judgment [P. 14] will be denied, the motions of the defendant for summary judgment [PP. 17 and 24] and to dismiss the second amended complaint [P. 33] will be granted, and the instant adversary proceeding will be dismissed.

## FINDINGS OF FACT

1.  On October 24, 2006, the debtors, Kelly and Alan Pultz, filed a joint Chapter 13 bankruptcy petition in this Court.  Listed among their scheduled assets was real property located at 702 West Edgewood Avenue, Indianapolis, Indiana (the "Edgewood Property").  The Edgewood Property was titled solely in Kelly Pultz's name, subject to a deed of trust held by NovaStar Mortgage, Inc. ("NovaStar").

2.  In Schedule A, the debtors valued the Edgewood Property at $115,000.  The debtors valued NovaStar's claim against the Edgewood property in the amount of $118,123.54.  The debtors estimated the cost of selling the Edgewood Property at $11,812, or one-tenth of its value.  Accordingly, the debtors conceded that there was no equity in the Edgewood Property.

---

[1]This Court has subject matter jurisdiction over the instant adversary proceeding under 28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is appropriate under 28 U.S.C. § 1409.

3.  The debtors' Chapter 13 plan proposed to surrender the Edgewood Property to NovaStar.

4.  Because there was no equity in the Edgewood Property and the plan provided for its surrender, NovaStar filed a motion for relief from stay on February 23, 2007.  The debtors did not oppose the motion and relief from the automatic stay was granted to NovaStar by order [P. 33 in main case] dated  March 19, 2007, which provided as follows:

> Upon consideration of the Motion for Relief from Stay filed by the Movant, NovaStar Mortgage, Inc., for good cause shown, and no opposition having been filed by the Respondent(s), it is ORDERED, that the stay of 11 U.S.C. Section 362(a) be and hereby is terminated so as to permit the Noteholder, or its assigns, to enforce its rights under the provisions of the Deed of Trust, and/or to resume or commence foreclosure proceedings under the provisions of the Deed of Trust dated April 30, 2003, and recorded among the land records of Marion County, State of Indiana, at Instrument No. 2003-0106468 and secured by the real property of the Debtor(s) at 702 West Edgewood Ave., Indianapolis, Indiana; and, it is further ORDERED, that this relief shall apply to proceedings for possession of the real property after the foreclosure sale."

*Id*.

5. On April 11, 2007, NovaStar's Indiana attorney sent a letter to the plaintiff, stating, "our client has accelerated all sums due and owing.  This means that the entire principal balance and all other sums recoverable under the terms of the note and mortgage are now due and owing."  The letter claimed that the amount owed was

$130,068.79.  In addition,  NovaStar sent the plaintiff a loan statement dated April 13, 2007, that indicated that $13,028.92, representing overdue payments and $515.85, representing unpaid late charges, were due and payable to NovaStar.  Plaintiff's Exhibit No.2.

6.  On April 26, April 30, May 3 and May 16, 2007, representatives of NovaStar attempted to contact the plaintiff by telephone.  Each time, the only communication was a message either asking the plaintiff what her intentions were regarding the Edgewood Property or simply asking the plaintiff to return the telephone call.

7.  On May 22, 2007, the plaintiff filed the instant adversary proceeding in which she alleged violations of the automatic stay, the Fair Debt Collection Practices Act, ("FDCPA") and the Maryland Consumer Debt Collection Act ("MCDCA").  On July 6, 2007, NovaStar filed an answer [P. 9] to the complaint.

8.  On July 5 and July 30, 2007, NovaStar sent the plaintiff notices concerning escrow overdrafts in the respective amounts of $1,939.87 and $2,572.77.

9.  Between August 29 and August 31, 2007, NovaStar again left recorded phone messages with the plaintiff.  The messages identified the caller and informed her of a return telephone number.  In an affidavit of K. Ross Watson, employed by NovaStar as a "bankruptcy supervisor," Mr. Watson stated that these telephone calls

4

were the result of the inadvertent removal of a no-contact code from the account of Kelly Pultz on NovaStar's computer system.  Defendant's Exhibit I, Watson Affidavit.

10.  On September 26, 2007, the plaintiff amended her complaint [P.21] to add allegations regarding the July letters and the August phone calls.

11. On October 17, 2007, NovaStar filed a motion for summary judgment as to the Amended Complaint [p.24].

12.  On November 7, 2007, a hearing was held on the defendant's motions for summary judgment, at which time the Court took the matter under advisement and informed the parties that it would prepare a written opinion.

13.  While the matter was under advisement, the plaintiff filed an unopposed motion to amend the complaint to include new allegations.  The motion was granted and on January 9, 2008, the plaintiff filed a second amended complaint [P. 29].  The complaint newly alleged that on October 12, 2007, NovaStar sent the plaintiff an interest rate adjustment letter, which purported to increase the interest rate on her loan, and that on October 15, 2007, NovaStar transferred the servicing of the loan to Saxon Mortgage Services ("Saxon").  It was also alleged that NovaStar sent a notice of this transfer to the plaintiff.  On October 17, 2007, Saxon allegedly sold the Edgewood Property at a foreclosure sale, after which, according to the second amended complaint,  "Defendant continues to send correspondence to the [plaintiff] as if she

5

had never filed bankruptcy and as if the loan was still in existence which is clearly not the case."  Second Amended Complaint, ¶ 39.

14.  On January 22, 2008, NovaStar filed a motion to dismiss [P. 33] the second amended complaint.   In its motion, NovaStar calls attention to a conspicuous disclaimer in the notice of adjustment of interest which stated that, "in the event that the underlying debt has been discharged as a result of a prior bankruptcy proceeding, NovaStar hereby acknowledges that it is not assessing personal liability for the debt to the borrowers."  Plaintiff's Exhibit No. 3.  Novastar also calls attention to the Real Estate Settlement Procedures Act, ("RESPA") which requires notice to a debtor when loan servicing has been transferred.

## CONCLUSIONS OF LAW

1. The standard of review for summary judgment motions is set forth in *Ramsey v. Bernstein (In re Bernstein)*, 197 B.R. 475, 477-78 (Bankr. D. Md. 1996), *aff'd* 113 F.3d 1231 (4th Cir. 1997), as follows:

> Pursuant to Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed.2d 202 (1986).  In determining the facts for summary judgment purposes, the court may rely on affidavits made with personal knowledge that set forth specific facts otherwise admissible in evidence and sworn or certified copies of

papers attached to such affidavits.  Fed.R.Civ.P. 56(e), made applicable
by Bankr. Rule 7056.  When a motion for summary judgment is made
and supported by affidavits or other evidence, "an adverse party may not
rest upon mere allegations or denials. . . ."

*Id.*

2.   Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable

herein by Federal Bankruptcy Rule 7012(b), provides, as follows:

(b) Every defense to a claim for relief in any pleading must be asserted
in the responsive pleading if one is required. But a party may assert the
following defenses by motion...

(6) failure to state a claim upon which relief can be granted...

Fed. R. Civ. P. 12(b)(6).

3.   When ruling on a Rule 12(b)(6) motion, the Court accepts as true all

well-pleaded allegations in the complaint, including all reasonable inferences that may

be drawn from them, in the light most favorable to the plaintiff.  *Hemelt v. Pontier,*

*(In re Pontier)*, 165 B.R. 797, 798-99 (Bankr. D. Md. 1994).  "[A] complaint should

not be dismissed merely because the court doubts that the plaintiff will ultimately

prevail; so long as a plaintiff colorably states facts which, if proven, would entitle him

to relief, the motion to dismiss should not be granted."  *Advanced Health-Care*

*Services, Inc. v. Radford Community Hospital*, 910 F.2d 139, 145 n.8 (4th Cir. 1990);

*Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir. 1982).  However, "while a complaint

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

7

allegations, a plaintiff's obligation to provide the 'grounds 'of his 'entitlement to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964-65, 167 L. Ed.2d. 929 (May 21, 2007). The pleadings must plausibly suggest that the plaintiff is entitled to relief. *Id*. at 1966.

4.  The Fourth Circuit has held that "[i]t is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, allowing them to assess whether genuine issues of material fact do indeed exist." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. Dec. 14, 2007). Because the bankruptcy court is a unit of the U.S. district court, this Court may also make such a conversion. *See In re Professional Coatings (N.A.), Inc.*, 210 B.R. 66, 70 (Bankr. E.D. Va. 1997). Because the defendant has submitted affidavits and exhibits in its original motions for summary judgment, and presented argument thereon, this Court will review the motion to dismiss as if it were also a motion for summary judgment.

5.  A bankruptcy petition acts as an automatic stay of most actions by creditors against the debtor and the debtor's property. 11 U.S.C. § 362(a). However, when the debtor lacks equity in secured property, 11 U.S.C § 362(d) provides that the Court shall grant relief from the automatic stay by terminating, annulling, modifying or conditioning such stay. The plaintiff conceded that she had no equity in the

Edgewood Property, and this Court terminated the stay with respect to actions against it.

6. Tthe plaintiff now contends that the order terminating the automatic stay only allowed NovaStar to pursue its *in rem* foreclosure remedies and did not authorize it to contact her personally. This Court disagrees. The automatic stay does not bar a lender from notifying a debtor of an escrow deficiency or from making other notification that are required by RESPA. *See, e.g., Chase Manhattan Mortgage Corp. v. Padgett,* 268 B.R. 309, 314 (S. D. Fla. 2001) (finding that "while section 362(a) prohibits a mortgagee from exerting pressure on a mortgagor to repay advances, it does not prohibit a mortgagee from merely providing necessary information or notice to a mortgagor of escrow deficiencies."); *see also In re Whitmarsh*, 383 B.R. 735, 736-37 (Bankr. D. Neb. Jan. 7, 2008)("The lender could not risk failing to comply with state, federal, and contract law simply because Debtors had stated an intention to surrender the property").

7. Assuming that the termination of the stay authorized NovaStar to pursue only *in rem* relief against the Edgewood Property, almost all of the contacts NovaStar initiated with Mrs. Pultz were related to the foreclosure. The mortgage note required the acceleration notice in order to foreclose. The purpose of the telephone calls placed by NovaStar were to offer the plaintiff the standard option of a deed in lieu of

foreclosure. The notice of transfer of servicing of the loan was required by law. RESPA, 12 U.S.C. § 2605(b)(1). The notice of interest rate adjustment was required by the contract itself, and contained a conspicuous disclaimer that it did not create personal liability because the debtor had filed bankruptcy.

8. The only contact arguably not made pursuant to any foreclosure or RESPA requirement was the sending of the loan statement. However, the Court finds the loan statement to be purely informational in nature. It merely provided the plaintiff notice of the amount due should she desire to redeem the property, a right she has under the mortgage contract when the debt is accelerated. Additionally, while some courts have found the sending of postpetition loan statements to violate the automatic stay, *see, e.g., In re Connor*, 366 B.R. 133, 137 (Bankr. D. Haw. Apr. 2, 2007) (finding that in a case converted from Chapter 13 to Chapter 7, pre-conversion loan statements did not violate the stay, while post-conversion loan statements might because post-conversion, debtor had no interest in knowing amount due), those cases involved debtors who had no use for the information in the loan statement. The loan statement here is useful in predicting the size of any deficiency judgment. A Chapter 13 debtor is allowed to pay a postpetition deficiency judgment through a plan, *see, e.g. In re Ferrante,* 195 B.R. 990, 993 (Bankr. N.D. N.Y. 1996) ("Normally, any claim [Bank] had with respect to said deficiency judgment would constitute an unsecured claim... to be paid pro rata

10

with other unsecured claims pursuant to... the Plan"), and the debtors' confirmed Chapter 13 plan provides for such a procedure [P.36 in main case].

9.   This Court finds that the sending of this single loan statement was for informational purposes only, because it would assist the debtor in forecasting the amount of the deficiency she could pay as an unsecured claim pursuant to her Chapter 13 plan.  At least pre-confirmation, a Chapter 13 debtor continues to have an interest in knowing the size of a deficiency judgment she proposes to pay through a plan, and which might not be discharged due to failure to complete the plan.[2]

10.   Additionally, assuming the automatic stay remained in effect, the communications by NovaStar are precisely those permitted by Local Bankruptcy Rule 4001-5, which provides:

> Creditors and lessors may continue to provide customary notices, including, but not limited to, monthly statements, payment coupons, escrow adjustment analyses to debtors regarding post-petition activity (sic).  Further to the extent available, creditors and lessors may allow debtors to access, obtain information, and make post-petition payments through electronic, telephonic and/or on-line means.

---

[2]The plan was confirmed on April 11, 2007 [p.37 in main case], and the order confirming the plan was mailed to all creditors two days later on April 13 [p.39 in main case].  The date of the loan statement is also April 13, 2007.  Thus, at the time of the loan statement, NovaStar had no notice that the plan had been confirmed.

11

The creditor's or lessor's actions outlined in the immediately preceding paragraph shall not be considered a violation of the automatic stay.

*Id.*

11.  It is well settled that, pursuant to 15 U.S.C. § 1692a(F)(6)(ii), creditors have no liability for violations of the FDCPA.  *See Scott v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp.2d 709, 717 (E.D. Va. 2003), *citing Perry v. Stewart Title Co.*, 756 F.2d 1197 (5th Cir. 1985) ("It is well-settled that provisions of the FDCPA generally apply only to debt collectors...[a]nd, creditors are not liable under the FDCPA.")(internal citations omitted).  The FDCPA does apply to NovaStar's Indiana attorneys, who were not made defendants in this complaint.  *See Jackson-Spells v. Francis*, 45 F. Supp.2d 496, 497 (D. Md. 1999), *citing Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L. Ed.2d 395 (1995). ("The Act clearly covers the activities of attorneys who undertake debt collection efforts, including litigation.").  However, the communication sent by the Indiana attorneys was required by the  FDCPA.[3]  *See*

_____

[3]15 U.S.C. § 1692g, which provides as follows:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any

13

*also Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 483 (4th Cir. 1991)

("Section 1692g requires a debt collector to send a consumer, either in its initial

communication or within five days of its initial communication, a written notice

containing: 1) the debt amount; 2) the name of the current creditor; 3) a statement that

─────────────────

collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

(d) Legal pleadings

A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section.

(e) Notice provisions

The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by the Internal Revenue Code of 1986, chapter 94 of this title [15 U.S.C.A. § 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

*Id.*

14

if the consumer disputes the debt in writing within thirty days, the collector will send verification of the debt to the consumer; 4) a statement that if the consumer does not dispute the debt within thirty days, the collector will assume the debt to be valid; 5) a statement that the collector will send the name of the original creditor, upon written request within thirty days."). Accordingly, the Court finds no violation of the FDCPA by the defendant's actions here.

12. Moreover, NovaStar's actions did not violate the Maryland Consumer Debt Collection Act, Maryland Comm. Law Code § 14-201 *et seq.* Mrs. Pultz did not identify which section of the MCDCA was violated in her complaint but alleged in her motion for summary judgment that NovaStar caused false information to be placed on her credit report, in violation of Maryland Comm. Law Code § 14-202(5).[4] The plaintiff indicated in her motion for summary judgment that she attached the credit report but no such credit report has been found. However, her allegations concerning the placement of information on her credit report do not satisfy the requirements of Section 14-202(5), quoted above, because she did not allege the existence of a third

---

[4]Section 14-202(5) of the Act provides that a debt collector may not "disclose or threaten to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information." Md. Code, Comm. Law § 14-202(5) .

party to whom Novastar threatened to disclose information with knowledge that the third party had no legitimate need for such information.

WHEREFORE, because there is no genuine issue of material fact that the defendant is entitled to judgment as a matter of law, the plaintiff's motion for summary Judgment will be DENIED, the defendant's motions for summary judgment will be GRANTED, the defendant's motion to dismiss the second amended complaint will GRANTED, and the instant adversary proceeding will be DISMISSED.

ORDER ACCORDINGLY.

cc:    Andrew G. Wilson, II, Esquire
       275 West Street,  Suite 216
       Annapolis, Maryland  21401
       Counsel to the Plaintiff

       Deborah K. Curran, Esquire
       Curran & O'Sullivan, P.C.
       8101 Sandy Spring Road # 302
       Laurel, Maryland  20707
       Counsel to NovaStar Mortgage, Inc.

       Gerard R. Vetter, Esquire
       7310 Ritchie Highway, Suite 715
       Glen Burnie, Maryland  21061-3293
       Chapter 13 Trustee

       Office of the U.S. Trustee
       2625 U.S. Courthouse
       101 W. Lombard Street
       Baltimore, Maryland  21201